|  |  |
|---|---|
| **UNITED STATES DISTRICT COURT** | |
| **DISTRICT OF NEVADA** | |
| Carrington Mortgage Services, LLC, | Case No. 2:17-cv-01530-JAD-PAL |
|     Plaintiff | |
| v. | |
| SFR Investments Pool 1, LLC; and Liberty at Mayfield Community Association, | **Order Granting Motion for Summary Judgment** |
|     Defendants | [ECF No. 40] |
| SFR Investments Pool 1, LLC, | |
|     Counter/Cross Claimant | |
| v. | |
| Carrington Mortgage Services, LLC; Michelle Majors; Cassandra J. Lemons, | |
|     Counter/Cross Defendants | |

Carrington Mortgage Services, LLC brings this action to challenge the effect of the 2013 non-judicial foreclosure sale of a home on which it claims a deed of trust.[1] Carrington sues the Liberty at Mayfield Community Association (HOA), which conducted the foreclosure sale, and foreclosure-sale purchaser SFR Investments Pool 1, LLC, seeking a declaration that the sale was invalid or that SFR purchased the property subject to Carrington's security interest. Carrington now moves for summary judgment on all claims. Because Carrington has demonstrated that its predecessor-in-interest validly tendered the superpriority portion of the HOA lien but the HOA foreclosed anyway, I grant Carrington's motion and close this case.

---

[1] ECF No. 1.

**Statement of Facts**

Michelle Majors and Cassandra Lemons purchased the home located at 4245 Creek Bed Court, in Las Vegas, Nevada in 2009 with a loan from Taylor, Bean & Whitaker Mortgage Corp. (TB&W), secured by a deed of trust.[2] Recorded documents reflect that TB&W assigned that deed of trust to Bank of America in 2011.[3] Carrington alleges that the home is located in the Mayfield common-interest community and subject to the declaration of covenants, conditions, and restrictions for the Liberty at Mayfield Community Association.[4] The Nevada Legislature gave HOAs a superpriorty lien against residential property for certain delinquent assessments and established in Chapter 116 of the Nevada Revised Statutes a non-judicial foreclosure procedure for HOAs to enforce that lien.[5] When the assessments on this home purportedly

---

[2] ECF No. 40-1 at 1.

[3] *Id*. at 13. As a foundational argument, SFR "disputes the validity of the purported assignments" and contends that "The Bank failed to produce any evidence that may have proved the transaction through which it obtained its purported interest, i.e., the original, wet-ink signature promissory note, a purchase and sale agreement identifying the loan, a check or wire transfer showing payment for the loan underlying the deed of trust, or any proof of the purported transfer to the Bank." ECF No. 47 at 2. It contends that some "mortgage holders and servicers" have "engaged in serious misconduct that drew into question the validity of documentation underlying their property transactions," speculating that the same could be a problem here. *Id*.; *see also* ECF No. 47-1. But SFR offers zero evidence that the chain of title in this case is suspect. Speculation is insufficient to create a genuine issue of fact about whether the assignments in this case were valid. Carrington has provided the recorded assignments, *see* ECF No. 40-1 at 13, 16, I take judicial notice of them, and SFR has failed to create a genuine issue of fact about their validity.

[4] The deed of trust is attached at ECF No. 40-1 at 1, but it does not contain a planned-unit-development rider typical of properties in common-interest communities. So I cannot confirm from the documents in this record that the property is governed by the HOA.

[5] Nev. Rev. Stat. § 116.3116; *SFR Investments Pool 1 v. U.S. Bank*, 334 P.3d 408, 409 (Nev. 2014).

became delinquent, the HOA commenced non-judicial foreclosure proceedings on it under Chapter 116.[6]

When Bank of America learned of the impending foreclosure, its counsel, the law firm of Miles, Bauer, Bergstrom & Winters, LLP, sent a letter to the HOA asking for "the HOA payoff ledger detailing the super-priority amount" of the HOA's lien "by providing a breakdown of nine (9) months of common HOA assessments in order for [Miles Bauer] to calculate the super priority amount."[7] The HOA's agent Alessi & Koenig, LLC, responded with a breakdown of "fees, interest and costs" reflecting a total amount due of $3,571.54.[8] Miles Bauer responded by disputing the payoff amount as "includ[ing] many fees that are not allowed to be included in the Super-Priority Amount."[9] It stated, "[a]s a show of good-faith, our client has authorized us to make payment to you in the amount of $585.00 to satisfy its Super-Priority Amount obligations to the HOA . . . ."[10] The letter explained that Miles Bauer was sending a $585.00 cashier's check that "represents the maximum 9 months['] worth of delinquent assessments recoverable by an HOA against the first deed of trust lienholder."[11] It further stated that "This is a non-negotiable amount and any endorsement of said cashier's check on your part, whether express or implied, will be strictly construed as an unconditional acceptance on your part of the facts stated herein and express agreement that [the bank's] financial obligations towards the HOA in regards to the

---

[6] ECF No. 40-1 at 19 (notice of lien for delinquent assessments), at 22 (notice of default and election to sell under homeowners association lien), and at 24 (notice of trustee's sale).
[7] ECF No. 40-1 at 34.
[8] *Id*. at 36.
[9] *Id*. at 45.
[10] *Id*.
[11] *Id*.

3

real property . . . have now been 'paid in full.'"[12]  The HOA apparently rejected the $585 tender because it foreclosed on the property seven months later.[13]  SFR was the winning bidder at $11,000.[14]  In June 2016, Bank of America assigned the deed of trust to Carrington.[15]

As the Nevada Supreme Court held in *SFR Investments Pool 1 v. U.S. Bank* in 2014, because NRS 116.3116(2) gives an HOA "a true superpriority lien, proper foreclosure of" that lien under the non-judicial foreclosure process created by NRS Chapters 107 and 116 "will extinguish a first deed of trust."[16]  The bank brings this action to save its deed of trust from extinguishment.  It pleads four claims: quiet title, breach of NRS 116.3116, wrongful foreclosure, and injunctive relief, which the bank collectively characterizes as "a quiet title dispute."[17]  SFR counterclaims for quiet title and injunctive relief.[18]

Discovery has closed,[19] and Carrington moves for summary judgment in its favor on all claims.[20]  SFR opposes the motion, but the HOA filed no response.[21]  Although Carrington offers a handful of reasons why I must hold that the HOA foreclosure sale did not extinguish its deed of trust, because I find that Carrington has established that Bank of America validly tendered the superpriority portion of the lien amount, voiding the HOA's sale on the superpriority portion and

---

[12] *Id*. at 45–46.
[13] *Id*. at 50.
[14] *Id*.
[15] ECF No. 40-1 at 16.
[16] *SFR Investments Pool 1 v. U.S. Bank*, 334 P.3d at 419.
[17] ECF No. 40 at 2.
[18] ECF No. 11 (SFR's counterclaim).
[19] ECF No. 37.
[20] ECF No. 40.
[21] ECF No. 47 (SFR's response).

4

causing the deed of trust to survive the foreclosure sale, I grant the motion on this tender issue alone, enter summary judgment in Carrington's favor on all claims, and do not reach the parties' remaining arguments.

**Discussion**

**A.     Summary judgment standard**

The principal purpose of the summary-judgment procedure is to isolate and dispose of factually unsupported claims or defenses.[22] The moving party bears the initial responsibility of presenting the basis for its motion and identifying the portions of the record or affidavits that demonstrate the absence of a genuine issue of material fact.[23] When the plaintiff bears the burden of proof at trial "it must come forward with evidence [that] would entitle it to a directed verdict if the evidence went uncontroverted at trial."[24] The plaintiff must establish "beyond controversy every essential element of its" claim in order to avoid trial and prevail on summary judgment.[25]

**B.     Bank of America's tender of the superpriority amount cured the default, so SFR took the property subject to the deed of trust.**

Carrington argues that the bank's tender of $585, which consists of nine months of assessments, operated to discharge the HOA's lien and should have prevented the HOA from foreclosing on that lien.[26] Six months ago in *Bank of America v. SFR Investments Pool 1, LLC*,

---

[22] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

[23] *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

[24] *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992) (citation and quotations omitted)).

[25] *S. California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003).

[26] ECF No. 40 at 9–11.

the Nevada Supreme Court held that a nearly identical "tender cured the default as to the superpriority portion of the HOA's lien, [so] the HOA's foreclosure on the entire lien resulted in a void sale as to the superpriority portion. Accordingly, the HOA could not convey full title to the property, as Bank of America's first deed of trust remained after foreclosure . . . [and] SFR purchased the property subject to Bank of America's deed of trust."[27] In that case, just as here, Bank of America contacted the HOA to get clarification on the superpriority amount due. Based on the information received from the HOA, the bank tendered nine months' worth of assessments to the HOA with what appears to be an identical letter to the one here.[28] And just as in this case, the HOA rejected the payment and sold the property at foreclosure to SFR.[29]

The Nevada Supreme Court explained that "[a] valid tender of payment operates to discharge a lien or cure a default."[30] Although a valid tender requires payment in full, for purposes of satisfying an HOA's superpriority lien and thus saving a deed of trust from extinguishment under the version of the foreclosure statute in effect in 2013, the bank needed to pay only "charges for maintenance and nuisance abatement, and nine months of unpaid assessments."[31] Because the bank properly calculated nine months' worth of assessments based on the HOA's information, "and the HOA did not indicate that the property had any charges for maintenance or nuisance abatement," the Court found that, "[o]n the record presented, this was the full superpriority amount."[32] And although tenders "must be unconditional, or with

---

[27] *Bank of America v. SFR Investments Pool 1, LLC*, 427 P.3d 113, 121 (Nev. Sept. 13, 2018).
[28] *Id*. at 116.
[29] *Id*. at 116–17.
[30] *Id*. at 117.
[31] *Id*. (citing 116.3116(2) and *SFR*, 334 P.3d at 412).
[32] *Id.* at 118.

6

conditions on which the tendering party has a right to insist," the Nevada Supreme Court found that the bank's tender conditions—which were materially identical[33] to those imposed here—were permissible.[34]

SFR attempts to undermine Carrington's tender argument by claiming that there was no tender here. It contends that Miles Bauer just sent a letter inquiring about the assessments, "[t]he letter contained no payment, and the Bank never delivered any payment to the Association or their Agent, Alessi & Koenig. . . ."[35] But the record belies this claim.

Carrington has demonstrated through the affidavit of the managing partner at Miles Bauer,[36] as its custodian of records, that Bank of America employed the same procedures here as it did in the foreclosure sale that the Nevada Supreme Court evaluated in *Bank of America v. SFR*. Miles Bauer first sent a letter explaining that the bank intended to satisfy the superpriority portion of the lien and asking the HOA for a breakdown of the outstanding charges.[37] Had they stopped there, SFR may have an argument, and it appears from SFR's *the-bank-just-asked-about-assessments-but-it-never-sent-a-check* response that SFR is under the misperception that

---

[33] *Compare id*. at 118 *with* ECF No. 40-1 at 45 ("This is a non-negotiable amount and any endorsement of said cashier's check on your part, whether express or implied, will be strictly construed as an unconditional acceptance on your part of the facts stated herein and express agreement that [the bank's] financial obligations towards the HOA in regards to the real property . . . have now been 'paid in full.'").

[34] The Nevada Supreme Court reaffirmed these principles and the effect of Bank of America's tender procedures employed here just weeks ago in *Bank of America v. Thomas Jessup, LLC Series VII*, __ P.3d __, 2019 WL 107513, *4 (Nev. March 7, 2019), when it found that the same Miles Bauer letter sent in the instant case on March 25, 2013, offering to pay the superpriority portion of the lien, *see* ECF No. 40-1 at 33–34, "combined with [the HOA's] rejection of that offer, operated to cure the default as to that portion of the lien such that the ensuring foreclosure sale did not extinguish the first deed of trust."

[35] ECF No. 47 at 19.

[36] ECF No. 40-1 at 26–29.

[37] *Id*. at 33–34.

Miles Bauer did stop there.[38] But this was not the last step that the bank took to satisfy this HOA lien.

The HOA responded to Miles Bauer's letter with the requested breakdown. It shows monthly assessments of $65 that had gone unpaid and had been accruing late charges since about November of 2011.[39] Miles Bauer then multiplied that $65 monthly assessment by nine (which was the number of months of assessments that the statute permitted it to include in the superpriority lien amount) to come up with the $585 total, and Miles Bauer cut and sent a $585 cashier's check to the HOA with a cover letter materially identical to that in *Bank of America v. SFR* on April 24, 2013. Carrington attaches a copy of that check and a document that purports to be a receipt of that check, signed by "An Employee of Alessi & Koenig, LLC" on April 26, 2013.[40] For reasons we don't know, the check was apparently rejected, and the foreclosure sale went forward on November 13, 2013.[41]

SFR also argues that Miles Bauer "did not offer to pay any maintenance and/or nuisance-abatement charges which are also part of the superpriority portion of the lien,"[42] but SFR points to nothing in the record to support the notion that the HOA's lien included any maintenance or nuisance-abatement charges for this property. Indeed, the HOA's breakdown, which purports to be "an amended demand on behalf of" the HOA for this property, does not list any such charges.[43] On this record, then, it appears that Bank of America's agent tendered the correct

---

[38] *See* ECF No. 47 at p. 19, ll. 18, 24 (citing to only the first letter).

[39] ECF No. 40-1 at 36–42.

[40] *Id.* at 46, 48. SFR offers nothing to dispute the validity of these documents or what they purport.

[41] *See id.* at 29, 31, 50.

[42] ECF 47 at 19.

[43] *See* ECF No. 40-1 at 36–42.

amount to satisfy the superpriority portion of the lien. Based on the HOA's accounting, nine months' worth of assessment fees totaled $585, and the HOA did not indicate that the property had any charges for maintenance or nuisance abatement. Miles Bauer delivered a $585 check and received proof that the HOA's agent received it on April 26, 2013. On the record presented, this was the full superpriority amount. Carrington has thus demonstrated that there are no genuine issues of fact about the valid tender of the superpriority amount.

Under the Nevada Supreme Court's holding in *Bank of America v. SFR*, the bank's "valid tender cured the default as to the superpriority portion of the HOA's lien, [and] the HOA's foreclosure on the entire lien resulted in a void sale as to the superpriority portion." Therefore, "the HOA could not convey full title to the property," and SFR bought the property subject to Bank of America's deed of trust.[44]

Though Carrington pleads four causes of action,[45] its second cause of action for NRS 116.1113 breach is an alternative claim conditioned on the court determining that the deed of trust was extinguished, so that claim is no longer viable. "Injunctive relief" is a remedy, not an

---

[44] SFR also argues that the tender was invalid because it was not "kept good' by letting the creditor know [the bank was] always 'ready, willing and able to pay.'" This argument is also founded on SFR's erroneous belief that "the Bank never sent a check," just a demand and then "took no further action." *See* ECF No. 47 at 20. Not only is this argument factually meritless, *see supra* at p. 8, but the Nevada Supreme Court rejected the argument that a tender must be kept good in *Bank of America v. SFR*, 427 P.3d at 120 ("To satisfy the superpriority portion of an HOA lien, the tendering party is not required to keep a rejected tender good . . . .").

SFR's argument that the tender was ineffective because it was not recorded as NRS Chapter 111 requires was similarly rejected as a valid roadblock in *Bank of America*. *See* ECF No. 47 at 20–22. The Nevada Supreme Court held that "[t]endering the superpriority portion of an HOA lien does not create, alienate, assign, or surrender an interest in land. Rather it *preserves* a preexisting interest, which does not require recording. . . . Bank of America's tender did not . . . affect the property as prescribed in NRS Chapter 111." *Bank of America v. SFR*, 427 P.3d at 119–20 (emphasis original).

[45] *See* ECF No. 1.

9

independent cause of action, and Carrington has made no effort to demonstrate that injunctive relief is available here, so its fourth claim for relief is of no consequence. Carrington's remaining first and third causes of action are both equitable quiet-title claims of the type recognized by the Nevada Supreme Court in *Shadow Wood Homeowners Association, Inc. v. New York Community Bancorp*—an action "seek[ing] to quiet title by invoking the court's inherent equitable jurisdiction to settle title disputes."[46] SFR's quiet-title claim is of the same type, and its injunctive-relief claim falls with it.[47] So the net result of this motion is that summary judgment is entered in favor of Carrington on all the equitable quiet-title claims, and I dismiss all other claims as moot or noncognizable.

## Conclusion

IT IS THEREFORE ORDERED that Carrington Mortgage Services, LLC's Motion for Summary Judgment **[ECF No. 40] is GRANTED in part. Summary judgment is entered in favor of Carrington on both parties' equitable quiet-title claims, and all other claims are dismissed as moot or noncognizable.** The Clerk of Court is directed to ENTER FINAL JUDGMENT in favor of Carrington Mortgage Services, LLC that states:

> IT IS HEREBY DECLARED that the November 13, 2013, foreclosure sale of the property located at 4245 Creek Bed Ct., Las Vegas, Nevada 89129-6083, as reflected in the Trustee's Deed Upon Sale recorded in the Clark County Records as Instrument #201311180000217, resulted in a void sale as to the superpriority portion of the HOA's lien. Accordingly, the deed of trust remained on the property after foreclosure, and SFR purchased the property subject to the deed of trust recorded May 29, 2009, in the Clark County Records as Instrument #20090529-0005970.

---

[46] *Shadow Wood Homeowners Ass'n, Inc. v. New York Cmty. Bancorp*, 366 P.3d 1105, 1110–1111 (Nev. 2016).

[47] *See* ECF No. 11.

The Clerk of Court is instructed to ENTER JUDGMENT ACCORDINGLY and CLOSE THIS CASE.

Dated: March 28, 2019

_____
U.S. District Judge Jennifer A. Dorsey